UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 17-10141-DPW |
| | ) |
| JUAN ANIBAL PATRONE, | ) |
| | ) |
| Defendant | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**On May 30, 2017**, the defendant Juan Anibal Patrone was arrested and detained. **On September 19, 2018**, Patrone pled guilty to a two-count superseding indictment charging him with conspiring to distribute heroin, cocaine, and more than 400 grams of fentanyl, in violation of 21 U.S.C. Sections 846 and 841(a)(1) and (b)(1)(A); and illegal possession of a firearm while being an alien illegally present in the United States. There was no plea agreement.

Patrone was the leader of a drug trafficking organization that involved at least 18 other people. A six-month wiretap investigation from **December 2016 to May 2017** showed that Patrone received hundreds of calls a day. He employed and paid salaries to stash house managers and drug couriers, who he dispatched to deliver drugs to, and collect proceeds from, the organization's customers. He typically sold over $5,000 worth of drugs per day. In addition, from **May to September of 2016,** Patrone sold almost 40 grams of fentanyl to a cooperating source and an undercover officer**. On May 30, 2017**, agents searched Patrone's residence and found a loaded 10 millimeter firearm on his bed. The firearm was originally purchased in New Hampshire, and Patron was a native of the Dominican Republic illegally residing in the United States.

Patrone's own words and additional investigation during the wiretap investigation show the scale and seriousness of the offense. For example,

- **On December 6, 2016**, Patrone told an associate he had "like $130,000 there" and that he had the money to buy "a $6 million house;"
- **On December 21, 2016**, co-defendant Matthew Shover contacted Patrone to purchase fentanyl and Patrone directed him to meet with two couriers in a Market Basket in Methuen. After the meeting, investigators conducted a car stop of Shover and seized over 50 grams of fentanyl;
- **On April 3, 2017**, investigators seized 70 grams of fentanyl from co-defendants Stacey Littlefield and Melvin Wetherspoon after Littlefield brokered a sale to Weatherspoon from Patrone;
- **On April 27, 2017**, co-defendant Oscar Marcano agreed to bring Patrone a gun, but officers stopped the Marcano and seized the gun. In a call the next day, Patrone told his son "they arrested Oscar when he was taking the gun;"
- Patrone used vehicles equipped with elaborate secret compartments specifically designed to shield drugs from seizure;
- **On May 30, 2017**, agents seized 350 grams of fentanyl and 220 grams of cocaine from one of the stash houses managed by Patrone.

The Presentence Investigation Report (PSR) found that Patrone: was responsible for 4-12 kilograms of fentanyl (34), possessed a firearm (+2), maintained a stash house (+2), committed the offense as part of a pattern of criminal conduct engaged in as a livelihood (+2), and was a leader of criminal activity that involved more than five participants (+4). The PSR gave Patrone credit for acceptance of responsibility (-3). Thus, the total offense level was 41. Patrone's

criminal history category was I, resulting in a guideline sentencing range (GSR) of 324 to 405 months (27-33 years).[1]

Patrone is only 28 years old.  His father was murdered when Patrone was 13 years old.  Patrone came to the United States on tourist and work visas in 2009 or 2010.  His family reside in the Dominican Republic, Italy, and the Lawrence area.  He has a two-year old son with his wife, from whom he is separated.  Patrone was stabbed in the stomach and chest in 2014, but recovered and has no serious medical concerns.  He reported that he drinks whiskey and uses cocaine on a daily basis.  He did not complete high school, and appears not to have ever had regular employment.

The government objected to the PSR's drug calculation, arguing that the evidence showed Patrone was responsible for 12-36 kilograms of fentanyl.  The Probation Office agreed that the evidence arguably supported a drug weight of just over 13 kilograms, but declined to modify the report.  According to the PSR, the primary reason for declining to modify the report was to remain consistent with the more conservative drug weight estimate the Court made in the sentencings of co-defendants Oscar Marcano, Josuel Patrone-Gonzalez, Luis Lugo, and Alex Gonzalez-Gonzalez.  The government will not be pressing this argument at sentencing.

The defendant has not submitted any objections.

Patrone ran an extensive, long-running criminal enterprise.  He operated with knowledge that it was a dangerous business, and evidently took steps to address those dangers, by possessing firearms, among other things.

---

[1] If the PSR eliminated the stash house and livelihood enhancements, the GSR would be 37/I = 210 to 262 months, or 17½-22 years.

Moreover, fentanyl is a deadly drug that has caused enormous harm in the United States, and especially in Massachusetts. Fentanyl is an extremely potent synthetic opioid used as a substitute for, or additive to, heroin. Over the past several years, regional drug traffickers substitute or combine heroin and fentanyl in order to take advantage of fentanyl's greater potency and lower cost. Nationwide, opioid-involved overdose deaths more than quadrupled between 2010 and 2015, and has continued to rise, with reports of more than 47,000 Americans having died of an opioid overdose in 2017.[2] To place this figure more starkly, "Every day, more than 130 people die after overdosing on opioids."[3] Synthetic opioids (such as fentanyl) were involved in 59.8% of all opioid-involved overdose deaths.[4]

Massachusetts has been one of the states hardest hit by the opioid crisis, and has been among the top ten states with the highest rates of opioid-related overdose deaths. In 2017, Massachusetts had an opioid-related overdose death rate of 28.2 deaths per 100,000 persons, which is nearly twice the national rate of 14.6 deaths per 100,000 persons.[5] While the increased

---

[2] National Institute on Drug Abuse, *Opioid Overdose Crisis* (Revised January 2019), *available at* https://www.drugabuse.gov/drugs-abuse/opioids/opioid-overdose-crisis (last visited on April 5, 2019).

[3] *Id.*

[4] Lawrence Schol, Puja Seth, Mbabazi Kariisa, Nana Wilson, Grant Baldwin, *Drug and Opioid-Involved Overdose Deaths – United States, 2013-2017,* Morbidity and Mortality Weekly Report (January 4, 2019), Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/mmwr/volumes/67/wr/mm675152e1.htm?s_cid=mm675152e1_w (last visited on April 5, 2019).

[5] National Institute on Drug Abuse, *Opioid-Related Overdose Deaths* (Revised March 2019), *available at* https://www.drugabuse.gov/drugs-abuse/opioids/opioid-summaries-by-state/massachusetts-opioid-summary (last visited on April 5, 2019).

availability of naloxone (also known as Narcan) has likely lowered the number of overdose deaths in Massachusetts in 2017, there were still 1,938 confirmed opioid-related overdose deaths in Massachusetts. The Department of Public Health estimates that there will be an additional 115 to 130 deaths confirmed for the year once all analysis is complete. For 2018, the final figures are still being compiled. Based upon the 2018 data available to date, of the 962 individuals whose deaths were determined to be opioid–related and a toxicology screen was performed, 863 (90%) had a positive result for fentanyl.[6]

Patrone, who oversaw the mixing of his drugs, could hardly have been unaware of the grim dangers posed by the fentanyl trade.

---

[6] Massachusetts Department of Public Health, *Data Brief: Opioid-Related Overdose Deaths Among Massachusetts Residents* (November 2018), *available at* https://www.mass.gov/files/documents/2018/11/16/Opioid-related-Overdose-Deaths-among-MA-Residents-November-2018.pdf (last visited April 5, 2019).

For all the foregoing reasons, the government recommends a sentence of imprisonment at the low end of the GSR determined by the Court, as there are no factors that support a departure or variance below the appropriate range.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ANDREW E. LELLING<br>United States Attorney |
|  | By:  /s/ Theodore B. Heinrich<br>THEODORE B. HEINRICH<br>Assistant United States Attorneys<br>U.S. Attorney's Office<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>(617) 748-3245 |
| Dated: May 1, 2019 | theodore.heinrich@usdoj.gov |

## Certificate of Service

I hereby certify that this document, filed through the Electronic Case Filing system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

|  |  |
|---|---|
|  |  /s/ Theodore B. Heinrich<br>THEODORE B. HEINRICH |
| Dated: May 1, 2019 | Assistant U.S. Attorney |